# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

DIRECTV, INC., a California Corporation,

                              Plaintiff,

        -vs-

JEFFREY L. LEWIS, JOHN M. MILITELLO,
ANDREW HERRNECKAR, RICHARD
TOMPKINS,

                              Defendants,

---

JOHN M. MILITELLO,

                              Counterclaimant,

        -vs-

DIRECTV, INC., a California Corporation,

                              Counter defendant.

---

DECISION AND ORDER

03-CV-6241-CJS-JWF

## I. INTRODUCTION

**Siragusa, J.:** Plaintiff/counter defendant DirecTV, Inc. ("DirecTV") alleges in a four-

count complaint filed on May 22, 2003, that defendant/counterclaimant John M. Militello

("Militello") purchased and used a pirate access device designed to permit viewing of

DirecTV's scrambled television programming without authorization by or payment to

DirecTV. The case is now before the Court on DirecTV's motion (# 70) pursuant to

Federal Rule of Civil Procedure 12(b)(6) to dismiss Militello's counterclaims. For the reasons stated below, DirecTV's application is granted.

## II. PROCEDURAL AND FACTUAL BACKGROUND

DirecTV commenced this action by filing a complaint on May 22, 2003. In its complaint, DirecTV alleges that it is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than ten million homes and businesses in the United States. Further, DirecTV maintains that it encrypts — electronically scrambles — its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming. DirecTV also states that it offers its television programming to residential and business customers either by a subscription, or on a pay-per-view basis only, and that each customer is required to obtain a DirecTV Access Card and other system hardware, including a small satellite dish, and create an account with DirecTV. DirecTV further alleges that upon its activation of the Access Card, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase. (Complaint ¶¶ 1–2.)

The complaint also states that on or about May 25, 2001, with the assistance of local law enforcement, DirecTV executed several writs of seizure upon a mail shipping facility used by several major sources of pirate technologies, including Vector Technologies, DSS-Stuff, DSSPro, DSS-Hangout, Whiteviper Technologies, Meadco, PCEase, Intertek Technologies, Shutt, Inc., and Canadian Security and Technology. During and subsequent to the raids, DirecTV contends that it came into possession of a

substantial body of sales and shipping records, e-mailed communications, credit card receipts, and other materials.

Paragraph 11 of the complaint contains factual allegations pertaining specifically to Militello. There, DirecTV alleges the following:

> Defendant John M. Militello is a resident of East Rochester, New York. Upon information and belief, beginning in or about April 2001, defendant Militello purchased one or more Pirate Access Devices from Canadian Security. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included:
>
> > (a) On or about April 10, 2001, defendant Militello purchased a Pirate Access Device, consisting of a printed circuit board device called an Unlooper, from Canadian Security. The device was shipped to defendant Militello at his address in East Rochester, New York.

(Complaint ¶ 11.)

DirecTV's complaint raises three claims against Militello: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a); and (3) possession of Pirate Access Devices in violation of 18 U.S.C. § 2512(1)(b). (Complaint ¶¶ 20-31.)

Militello filed an answer and counterclaims on April 30, 2004. In his counterclaims, Militello raises the following causes of action against DirecTV: (1) attempted extortion in violation of 18 U.S.C. § 1951 ("Hobbs Act"); (2) conspiracy to commit extortion in violation of 18 U.S.C. § 1951; (3) mail fraud in violation of 18 U.S.C. § 1341; a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962; (5) violation of the New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349; and (6) fraud and misrepresentation.

## III. LEGAL STANDARDS

In considering a motion to dismiss pursuant Rule 12 (b)(6), a moving party must show that the claimant can prove no set of facts in support of his claim that would entitle him to relief. *See H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989); see also 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][a] (Matthew Bender 3d ed.). here, the Court must view the counterclaims in the light most favorable to Militello, as the non-moving, giving him the benefit of all reasonable inferences party. *Id*.; see also 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true).

Further legal standards, pertaining to each of Militello's, counterclaims are discussed in detail below.

## IV. ANALYSIS

**A.** ***Militello's First and Second Counterclaims alleging Attempted Extortion and Conspiracy to Commit Extortion under the Hobbs Act***

Militello states that he was sent pre-litigation letters indicating the following: that he possessed an illegal pirate access device; that by so doing so he violated federal law; that he was subjected to damages of up to $10,000 per violation; and that his involvement in modifying devices to illegally gain access to DirecTV's scrambled satellite programming increased the potential damages to $100,000. In this regard, Militello maintains that DirecTV, Hughes Electronics, Yarmuth Wilsdon Calfo, PLLC and the End User Recovery

—

Project have violated 18 U.S.C. § 1951, also known as the Hobbs[1] Act. That statute provides in relevant part as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (2005).

Militello further alleges that "DirecTV and its agents" have sent about 100,000 letters to individuals throughout the country seeking settlements of $3,500 each. (Answer ¶ 44.) He also states that, upon information and belief, DirecTV "and its agents" have no evidence of actual interception of DirecTV's satellite signals, and that there are legitimate uses for the pirate access device allegedly possessed by Militello. (Answer ¶¶ 45-47.) Finally, Militello alleges that the communication from DirecTV, Hughes Electronics, Yarmuth Wilsdon Calfo, PLLC and the End User Recovery Project demanded that he give DirecTV "personal property, money and a signed statement that he would cease and desist from having any involvement in obtaining" unauthorized satellite broadcasts from DirecTV's system.

The Second Circuit reviewed the legislative history of the Hobbs Act, particularly with respect to its purpose, in a decision reversing judgments of conviction in a criminal case (which were subsequently affirmed by a later hearing at the same court):

---

[1]Hobbs Act (June 25, 1948, c. 645, 62 Stat. 793), Anti-Racketeering Act (Copeland Anti-Racketeering Act) (Hobbs Anti-Racketeering Act) (June 18, 1934, ch. 569, 48 Stat. 979), Sept. 13, 1994, Pub.L. 103-322, Title XXXIII, § 330016(1)(L), 108 Stat. 2147, now codified at 18 U.S.C. § 1951 (2005).

The 1945 debates on the bill that was eventually to become the Hobbs Act, *see* 91 Cong. Rec. 11,839-48, 11,899-922 (1945), showed both that the legislators believed that the 1934 Congress viewed extortion as having an element of wrongfulness, and that the Hobbs Act Congress—which retained the substance of the 1934 Act's prohibition—held the same view. *See id*. at 11,901-02, 11,906, 11,908, 11,920. The discussion leading to the express use of the word "extortion" in the Hobbs Act, and of the definition of that term, centered on the generally accepted meaning of the term, which traditionally included a component of wrongfulness. The Hobbs Act proponents pointed out that the 1934 Act was fashioned in no small measure after the then-current definition of extortion used in the New York Penal Code. *See, e.g.*, 91 Cong. Rec. 11,843, 11,900, 11,906; *see also United States v. Zappola*, 677 F.2d 264, 268 (2d Cir.), *cert. denied*, 459 U.S. 866 (1982); *United States v. Nedley*, 255 F.2d 350, 355 (2d Cir. 1958). That definition expressly included a "wrongfulness" element, *see* N.Y. PENAL LAW § 850 (Consol. 1930) (extortion is the "obtaining of property from another . . . with [his] consent, induced by a *wrongful* use of force or fear, or under color of official right" (emphasis added)), and the Hobbs Act proponents viewed that definition as representative of the extortion laws of every state, *see* 91 Cong. Rec. at 11,906. Thus, the definition of extortion included in the Hobbs Act reflected what its proponents believed to be the generally accepted definition. *See id*. at 11,900, 11,906, 11,910, 11,914; *see generally* Black's Law Dictionary 696 (4th ed. 1957) ("extort": "To gain by wrongful methods, to obtain in an unlawful manner, to compel payments by means of threats of injury to person, property, or reputation. . . . to exact something unlawfully by threats or putting in fear."). Accordingly, Representative Hobbs stated that the terms extortion and robbery "have been construed a thousand times by the courts. Everybody knows what they mean." 91 Cong. Rec. 11,912.

*United States v. Jackson*, 180 F.3d 55, 68-69 (2d Cir. 1999).

As the Southern District of New York observed in an action where a plaintiff alleged a violation of the Hobbs Act, "[t]hreats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion." *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001); *see also Building Industry Fund v. Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO*, 992 F. Supp. 162, 176 (E.D.N.Y. 1996) ("The filing of a meritless lawsuit or administrative

action, even if for the purpose of harassment, does not involve a threat of force, violence or fear."). The case law also states that,

> [t]o prove extortion under the Hobbs Act…, [a plaintiff] would have to show "wrongful means and wrongful objective." *Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205, 210 (S.D.N.Y. 1990) (discussing the Hobbs Act); *United States v. Enmons*, 410 U.S. 396, 419 n. 16 (1973) ("[E]xtortion requires an intent 'to obtain that which in justice and equity the party is not entitled to receive.'" (*quoting People v. Cuddihy*, 151 Misc. 318, 271 N.Y.S. 450, 456 (1934), and referring to New York State Law)).

*Andrea Doreen Ltd. v. Building Material Local Union 282*, 299 F. Supp.2d 129, 149 (E.D.N.Y. 2004).

Turning to the communications of which Militello complains, the first he includes is one from DirecTV End User Development Group, is dated August 7, 2002 and is signed by David Bautista, Investigator. (Militello's Mem. of Law (Docket No. 74), Ex. A.) Later that month, plaintiff received a letter with virtually identical wording, this time on the letterhead of law firm Yarmuth, Wilsdon, Calfo, PLLC, and signed by Spencer D. Freeman, Gregory Q. Zamudio, Deborah T. Boylston, and John M. Stellwagon. That letter starts with this sentence: "This law firm represents DIRECTV, Inc. in the investigation of and litigation regarding the illegal reception and use of its satellite television programming." (Letter from Spencer D. Freeman, Gregory Q. Zamudio, Deborah T. Boylston, and John M. Stellwagon to Mr. John M. Militello (Aug. 23, 2002), at 1.) It also warns that, "possessors and users of illegal signal theft equipment face substantial monetary damage awards for their conduct" (*Id.*, at 2), and makes the following offer:

> In return for your cooperation, DIRECTV is willing to forego litigation against you for violations occurring prior to the date of this letter. DIRECTV is prepared to release its claims in return for your agreement to: (1) surrender all illegally modified Access; Cards or other satellite signal theft devices in

your possession, custody, or control; (2) execute a written statement to the effect that you will not purchase or use illegal signal theft devices to obtain satellite programming in the future, nor will you have any involvement in the unauthorized reception and use of DIRECTV's satellite television program-ming; and (3) pay a monetary sum to DIRECTV for your past wrongful conduct and the damages thereby incurred by the company.

(*Id.*, at 2.) The second letter Militello provides is one dated July 2, 2003, from DirecTV End User Development Group. That letter includes information about the 6,465 individuals DirecTV sued in the United States as of the date of that letter, including 631 in New York State, advises Militello that his case had been forwarded to outside counsel, and indicates that, "[i]n the event we decide to file a lawsuit, any previous settlement offers are revoked…." (Militello's Mem. of Law (Docket No. 74), Ex. A, at 3.)

Militello's complaint is that the letters threaten litigation even though "DirecTV and its fellow wrongdoers possessed no evidence of actual interception of DirecTV's satellite signal by Defendant Militello at the time the demand letter was sent to him." (Militello's Mem. of Law, at 4.) However, this assertion overlooks the evidence that DirecTV did have. Specifically, DirecTV had documentary proof that Militello had purchased an Unlooper, a device which DirecTV alleges is capable of altering DirecTV access cards so those cards can receive DirecTV signals illegally. "A plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence to do so." *DirecTV, Inc. v. Gilliam*, 303 F. Supp. 2d 864, 870 (W.D. Mich. 2004) (*citing Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir.1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including actual interception)). In any event, the Court concludes that the actions of DirecTV's, and those of its "fellow wrongdoers," do not amount to a violation of the Hobbs Act. Threats of

litigation, even economically ruinous litigation, even unmeritorious litigation, do not constitute extortion. *See G.I. Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001).

Moreover, the Court finds that  prelitigation activities, such as those engaged in here, are protected by the *Noerr-Pennington* doctrine, a judicially created doctrine that protects a party's entitlement to act in furtherance of the First Amendment right to petition governmental authorities for redress. *Eastern Railroads Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). In construing a claimed antitrust violation, the Ninth Circuit held that the filing of a lawsuit is immune from antitrust laws under the *Noerr-Pennington* doctrine, unless that suit is a sham. The Court wrote:

> A sham suit is one that is an abuse of the judicial processes. In California Transport, the Supreme Court identified two types of sham activity: "misrepresentations . . . in the adjudicatory process" and the pursuit of "a pattern of baseless, repetitive claims." Thus, in California Transport, the Court held that a complaint alleging that the petitioner's competitors initiated administrative proceedings against the petitioner "without probable cause, and regardless of the merits," stated an antitrust cause of action.

*Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *aff'd sub nom Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993) (*citing California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 & 512 (1972)) (footnote omitted).

The Court is aware that a contrary view exists, that is, that *Noerr-Pennington* is applicable only to antitrust litigation. *See, e.g., Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885 (10th Cir. 2000). However, the concept has been extended,

by analogy, as recognized by the Second Circuit, to cases not involving anti-trust litigation:

> Courts have extended *Noerr-Pennington* to encompass concerted efforts incident to litigation, such as prelitigation "threat letters," *see McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir.1992) (holding that concerted threats of litigation are protected under *Noerr-Pennington*); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367-68 (5th Cir.1983) (same); *Barq's Inc. v. Barq's Beverages, Inc.*, 677 F. Supp. 449, 452-53 (E.D. La. 1987) (applying prelitigation rights to enforcement of trademark litigation), and settlement offers, *see Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993). Litigation, including good faith litigation to protect a valid copyright, therefore falls within the protection of the *Noerr-Pennington* doctrine.

*Primetime 24 Joint Venture v. National Broadcasting, Co., Inc.*, 219 F.3d 92, 100 (2d Cir. 2000); *Sosa v. DirecTV*, No. CV 03-5972 AHM (Rzx) (C.D. Cal. Dec. 3, 2003). *Noerr-Pennington* has also been extended to protect petitioning activity. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913-15 (1982) (holding First Amendment immunized non-violent petitioning conduct, and applied *Noerr-Pennington* in considering whether intent or purpose of boycott was relevant); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (*Noerr-Pennington* doctrine immunized defendants from tort liability for petitioning government to shut down nursing home); *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 649-50 (7th Cir. 1983) (applying *Noerr-Pennington* doctrine in context of complaints registered with Securities and Exchange.); *Cove Rd. Dev. v. Western Cranston Indus. Park Assocs.*, 674 A.2d 1234, 1237-38 (R.I. 1996) (Rhode Island Supreme Court held that the Petition Clause protected both petitioning at "the town-council level" and "access to court."); *see generally* Carol Rice Andrews, A Right of Access to Court under the Petition Clause of the First Amendment: Defining the Right, 60 Ohio St. L.J. 557 (1999). As the Second Circuit

observed,

> This circuit has not gone so far as to apply the *Noerr-Pennington* doctrine to state law causes of action. But it has, in the process of applying *Noerr-Pennington* and the sham exception to Sherman Act claims, explicitly described the doctrine as an application of the First Amendment. See *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 895-96 (2d Cir.1981) (issue is whether the conduct alleged "is immunized by the First Amendment from antitrust liability under the *Noerr-Pennington* doctrine"); *Miracle Mile Associates v. City of Rochester,* 617 F.2d 18, 20 (2d Cir.1980) ("Under *Noerr,* mere solicitation of governmental action through legislative processes ... is an activity which is fully protected by the First Amendment and is immune from Sherman Act liability...."); *Mountain Grove Cemetery Assoc. v. Norwalk Vault Co.,* 428 F. Supp. 951, 956 (D. Conn. 1977) ( "*Noerr* and *California Motor Transport* teach that when antitrust objectives and the right to petition for government action are in conflict, the scales must tip in favor of the First Amendment."). See also *Taylor Drug Stores, Inc. v. Associated Dry Goods Corp.,* 560 F.2d 211, 214 (6th Cir.1977) (per curiam) (referring to "rights under the First Amendment ... as those rights have been described in [*Noerr* ] and [*Pennington* ]").

*Suburban Restoration Co., Inc. v. ACMAT Corp.*, 700 F.2d 98, 101 (C.A. Conn. 1983)

Accordingly, the Court finds that Militello can prove no set of facts in support of his claim that would entitle him to relief. DirecTV had a good faith basis for asserting a claim against Militello and its statements in the letters, and the letters of its lawyers, are nothing more than threats to enforce a right they already had—litigation in this Court. Therefore, his  First Counterclaim alleging attempted extortion in violation of the Hobbs Act must be dismissed.

Since the Court has determined that there was no attempt to violate the Hobbs Act, Militello's Second Counterclaim, alleging a conspiracy to violate that Act, is similarly dismissed.

**B.      *Militello's Third Counterclaim Alleging Mail Fraud in Violation of 18 U.S.C. § 1341***

Militello also alleges that DirecTV, Hughes Electronics, Yarmuth Wilsdon Calfo, PLLC and the End User Recovery Project "have intentionally made false representation of material facts to Defendant regarding Defendant's purchase, possession and use of electronic equipment, as well as fraudulently represented misleading or false interpretations of federal statutes so DirecTV could collect an unlawful debt and attempt to extort money from the Defendant." (Answer ¶ 62.) The statute Militello relies on reads as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341 (2005). Militello has not alleged a scheme to defraud, and sending letters to a potential defendant in a lawsuit is, as the Court has already determined, above, protected activity in the context of a lawsuit. The Seventh Circuit, reviewing the meaning of "scheme to defraud" in the context of a similar statute, held that

[t]he plain meaning of "scheme" is a "design or plan formed to accomplish

> some purpose," Black's Law Dictionary 1344 (6th ed. 1990), or "a plan, design, or program of action to be followed." The Random House College Dictionary 1177 (rev. ed. 1980). To "defraud" means "to practice fraud," "to cheat or trick," Black's, *supra*, at 483, or "to deprive of a right or property by fraud," Random House, *supra*, at 349; "fraud" means "deceit, trickery, or breach of confidence, used to gain some unfair or dishonest advantage." *Id*. at 526.

*United States v. Doherty*, 969 F.2d 425, 428 (7th Cir. 1992). Nothing Militello has plead in his counterclaim suggests a scheme to defraud. Further, courts have held that serving litigation documents by mail cannot be a predicate act to establish mail fraud under the RICO statute. *Vemco v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994)(citations omitted); *see also Heights Community Congress v. Smythe, Cramer Co.*, 862 F. Supp. 204, 207 (N.D. Ohio 1994) (dismissing RICO claim and holding that a threat to sue unless a party agreed to settlement was not extortion or a predicate act for RICO purposes).These courts have rejected this mail-fraud theory on policy grounds, recognizing that such charges are merely 'artfully pleaded claims for malicious prosecution.'" *Id*. at 1208; *see also Auersperg v. von Bulow*, 657 F. Supp. 1134, 1146 (S.D.N.Y. 1987) (explaining that allegations of RICO fraudulent scheme was merely malicious prosecution claim); *Auburn Med. Ctr. Inc. v. Andrus*, 9 F. Supp. 2d 1291, 1297 (M.D. Ala. 1998) (finding "malicious prosecution claims, couched in terms of mail fraud claims, cannot give rise to a RICO action").

The Court also finds no misstatement of the law in the letters sent and cited by Militello. Though it is true that this Court has held there is no private cause of action for illegal possession of a pirate access device, the content of the letters correctly stated that possession of such devices is an offense under federal law. *See* 18 U.S.C. § 2512;

*DirecTV, Inc. v. Lewis*, No. 03-CV-6241CJS(F), 2004 WL 941805 (W.D.N.Y. Jan. 6, 2004). Militello can prove no set of facts in support of his mail fraud claim that would entitle him to relief.  Consequently, the Third Counterclaim must be dismissed.

### C.      Militello's RICO Counterclaim

MIlitello alleges that through a "'settlement scam'" (quotations in the original), DirecTV and its "co-conspirators … collected and attempted to collect an unlawful debt through overt extortion demands and/or directly or indirectly invested in, or maintained an interest in, or participated in an enterprise, the activities of which affect interstate or foreign commerce in violation of 18 U.S.C. § 1962(b)."[2] (Answer ¶ 70.) In addition to the allegations in his counterclaim, Militello has filed a RICO statement setting forth his claim in detail. The relevant subdivisions of § 1962 read as follows:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(a) & (b) (2005). Militello, in the RICO statement, cites to the prelitigation correspondence referred to earlier, and alleges that it

> misrepresented the illegality of an "unlooper" utilized [sic] the area of "smart card technology" by implying the device's only function was illegal.… This letter was sent without DirecTV, or its agents, possession any evidence of actual interception of Plaintiff's signal by Defendant, and with DirecTV

---

[2]In his RICO statement and in a later paragraph of the counterclaim, Militello alleges that DirecTV has violated both subdivisions (b) and (c) of 18 U.S.C. § 1962.

conducting no investigation in to Mr. Militello's alternate reasons for the alleged possession.

(RICO Case Statement, at 3.)  To plead a case under RICO, a claimant must allege at least two predicate acts. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (3d Cir. 1983). Racketeering activity includes extortion, as well as many other crimes. *See* 18 U.S.C. § 1961 (2005) (definitions). However, as the Court has previously determined, DirecTV and the others Militello names have not committed extortion. Even DirecTV's offer to settle its claim against Militello for $3,500 does not constitute extortion. *See G-I Holdings, Inc.*, 179 F. Supp. 2d at 259. Thus, Militello has failed to meet even the first prerequisite to pleading a civil RICO action. *Moss*, 719 F.2d at 17.

The Court is unpersuaded by Militello's citation to *DirecTV v. Haston*, No. 03-0228-CV-W-HFS (W.D. Mo. Mar. 30, 2004). In his decision, Judge Sachs addressed an argument made by DirecTV in that case that the defendant "fails to allege that it acquired the enterprise as a result of racketeering activity…." *Haston*, slip. opn. at 4. That argument has not been made here. Furthermore, as Judge Sachs points out in his decision, DirecTV failed to respond there to the defendant's assertion of a claim under § 1962(c). Thus, unlike the situation before this Court, in *Haston*, Judge Sachs was faced with a counterclaim and no argument in contradiction. Here, by contrast, the Court has reviewed DirecTV's arguments about its protected conduct and lack of extortion, and has determined that Militello has no basis for a claim that DirecTV attempted to extort money from him through a scheme to defraud. Furthermore, precedent in this circuit and others convinces the Court that Militello can prove no set of facts on his RICO claim that would entitle him to relief. *See G-I Holdings, Inc.*, 179 F. Supp. 2d at 259; *I.S. Joseph Co. v. J.*

*Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984); *DirecTV v. Keehn*, No. 5:03-CV-58, 2003 WL 23200249, *7 (W.D. Mich. May 21, 2003). As the court observed in *Nakahara v. Bal*, No. 97 CIV. 2027 (DLC), 1998 U.S. Dist. LEXIS 825 (S.D.N.Y. 1998),

> The core conclusion in *von Bulow* [*v. von Bulow*, 657 F. Supp. 1134 (S.D.N.Y. 1987)], that the threat of litigation or the initiation of unjustified lawsuits constituting malicious prosecution cannot alone form a predicate act for purposes of RICO, has been reached by numerous courts encountering these circumstances in this jurisdiction and others. *See, e.g., Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 U.S. Dist. LEXIS 9299, 90 Civ. 741, 1994 WL 329962, at *4 (N.D. Ill. July 7, 1994); *Ippolito v. State of Florida*, 824 F. Supp. 1562, 1575 (M.D. Fla. 1993); *Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 843 & n.2 (S.D.N.Y. 1991); *Manax v. McNamara*, 660 F. Supp. 657, 660-61 (W.D. Tex. 1987); *Paul S. Mullin & Assocs., Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986); *American Nursing Care of Toledo, Inc. v. Leisure*, 609 F. Supp. 419, 430 (N.D. Ohio 1984).

*Nakahara v. Bal*, No. 97 CIV. 2027 (DLC). Therefore, the Court grants DirecTV's motion to dismiss Militello's Fourth Counterclaim.

### D.    Militello's Fifth Counterclaim

Militello alleges a violation of the New York Consumer Protection Law, codified under New York General Business Law § 349(h). That statute reads in pertinent part as follows:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.…
>
> (h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.

N.Y. GEN. BUS. LAW § 349 (a) & (h). Under this statute, "[i]t is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.'" *Securitron*

*Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (quoting *AZBY Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988)).

Here, Militello has alleged as a basis for his claim under § 349 that, "DirecTV is attempting to defraud Defendant, and other similarly situated New York consumers, with false allegations, and with absolutely no proof whatsoever that [Defendant] had viewed without authorization any of DirecTV's television programming…." (Answer ¶ 80.) In order to make out a prima facie case claim under this statute, MIlitello must demonstrate that: (1) DirecTV directed the alleged deceptive acts at consumers; (2) the alleged acts misled customers in a material way; and (3) Militello has been injured as a result. *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*citing Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (1995)). In this case, the Court finds that the deceptive acts alleged by Militello fall outside the scope of § 349. For example, Militello does not allege that DirecTV intended to deceive consumers in a material way when it alleged that Militello "purchased illegal signal theft equipment to gain unauthorized access to DirecTV's programming." (Letter from Spencer D. Freeman, Gregory Q. Zamudio, Deborah T. Boyfston, and John M. Stellwagon to Mr. John M. Militello (Aug. 23, 2002), at 1.) DirecTV's prelitigation correspondence to Militello was not the conduct of any business, trade or commerce or in the furnishing of any service in this state; it was a threat to sue MIlitello for allegedly stealing DirecTV's satellite signals. Further, Militello has failed to show that the letters mislead him. In fact, he alleges just the opposite—that the letters falsely claim that he possessed illegal signal theft equipment. He makes a conclusory allegation that the unlooper is "legitimate electronic equipment." (Answer ¶ 83.)

Finally, the Court has already determined that the letters in this case were protected conduct by analogy to the *Noerr-Pennington* doctrine. Thus, the Court determines that the letters cannot form the basis for a claim under the New York statute. Further, the Court's research reveals one case from this District analogous to the case at bar: *DirecTV v. Rowland*, No. 04-CV-297S, 2005 U.S. Dist. LEXIS 2454, *8 (W.D.N.Y. Jan. 22, 2005). In that case, Judge Skretny held, *inter alia*, that the defendant had not properly plead a counterclaim under New York General Business Law § 349 since, "DirecTV's litigation letters were not sent in the course of conducting business."

Moreover, the Court concurs with the rationale in the district court cases cited by DirecTV construing the same type of counterclaim, based upon the Michigan Consumer Protection Act ("MCPA"). *See DirecTV, Inc. v. Keehn*, No. 5:03-CV-58, 2003 WL 2300249, at *3 (W.D. Mich. Jan. 22, 2004); *DirecTV, Inc. v. Personette*, No. 5:03-CV-66, 2003 WL 23200252 (W.D. Mich. Oct. 20, 2003); *DirecTV,Inc. v. Shea*, No. 5:03-CV-61, 2003 WL 23200250 (W.D. Mich. Oct. 20, 2003); *DirecTV, Inc. v. Shouldice*, No. 5:03-CV-62, 2003 WL 23200253 (W.D. Mich.  Oct. 20, 2003). For example, Judge Quist of the Western District of Michigan wrote,

> the MCPA does make clear that the defendant's acts must have occurred as part of an effort to further the sale or lease of goods or services to consumers. While DirecTV sells goods or services to consumers, the acts by DirecTV at issue in this case were not "trade or commerce," *i.e.*, conduct designed to further the sale or lease of goods or services to consumers. Rather, DirecTV was seeking to enforce its legal rights against persons whom DirecTV believed were engaging in the illegal theft of DirecTV's product (television signal).

*DirecTV, Inc. v. Shouldice*, 2003 WL 23200253, *4. Clearly this is what DirecTV's letters were attempting to do in this case as well, and that activity does not meet the New York

statute's requirements or purpose.

Thus, the Court determines that Militello can prove no set of facts to support his claim under the New York Consumer Protection Law, and his Fifth Counterclaim must be dismissed.

### E.     Militello's Sixth Counterclaim Alleging Fraud and Misrepresentation

Based on his conclusory assertion that an unlooper is a legitimate piece of electronic equipment, Militello alleges in his Sixth Counterclaim that DirecTV and its "co-conspirators" falsely represented that possession of an unlooper was illegal under federal law, and that DirecTV's representations "have caused Defendant to suffer humiliation, outrage, and indignation" in addition to economic losses. (Answer ¶¶ 86-91.) The Court agrees with DirecTV's assessment of this counterclaim as nothing more than a malicious prosecution claim pleaded as a fraud claim. The Court is persuaded that it cannot successfully be maintained in this action. *See Sasso v. Corniola*, 154 A.D.2d 362, 363 (N.Y. App. Div. 1989) ("A cause of action sounding in malicious prosecution…cannot be interposed as a counterclaim in the very civil action that was allegedly instituted wrongfully."); *von Bulow by Auersperg v. von Bulow*, 657 F. Supp. 1134 (S.D.N.Y. 1987) (fraud claim was really a cause of action for malicious prosecution). Moreover, possession of an unlooper, as alleged by DirecTV, is illegal, *see DirecTV v. Trone*, No. CV 02-05194 PA (Rcx) (C.D. Cal. Feb. 10, 2003) (finding that the T5 Loaders, Bootloaders, Unloopers, and Emulators in dispute were "primarily of assistance" in the unauthorized decryption of direct-to-home satellite systems), or if it is not, then DirecTV's expression of its opinion that its possession is illegal is not an opinion that can form the basis for a fraud claim,

see, e.g. *Magalnick v. Empire State Mutual Life Ins. Co.*, 13 Misc.2d 468, 468 (N.Y. Sup. Ct. Appellate Term 1958) (holding that a "misrepresentation was not actionable inasmuch as it was in essence a misrepresentation of law or a mere expression of opinion on the part of the defendant as to the legal effect or consequence of what plaintiff did."); *Zuyder Zee Land Corp. v. Broadman Bldg. Co., Inc.*, 86 N.Y.S. 2d 827, 828-29 (N.Y. Sup. Ct. 1949) ("Even if the action be considered as one for damages for innocent misrepresentation or breach of a warranty, there can still be no recovery for plaintiff. In an action to recover damages for an innocent misrepresentation, just as in an action to recover for a knowingly false misrepresentation, it is essential that plaintiff establish reliance upon the representation.").

## V. CONCLUSION

DirecTV's motion (# 70) to dismiss Militello's counterclaims is granted in total, and Militello's First, Second, Third, Fourth, Fifth and Sixth counterclaims (Answer ¶¶ 41-91) are dismissed from the Answer (# 64).

IT IS SO ORDERED.

Dated:   April 29, 2005
             Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge